Douglas E. Lumish (CA 183863)
doug.lumish@lw.com
Jeffrey G. Homrig (CA 215890)
jeff.homrig@lw.com
Patricia Young (CA 291265)
patricia.young@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, California 94025
Telephone: 650-328-4600
Facsimile: 650-463-2600

Attorneys for
Velodyne Lidar, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Velodyne Lidar, Inc.,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>Hesai Photonics Technology Co., Ltd.,<br><br>　　　　　Defendant. | CASE NO.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

Velodyne Lidar, Inc. ("Velodyne"), for its Complaint against Hesai Photonics Technology Co., Ltd. ("Hesai"), demands a jury trial and alleges as follows:

## INTRODUCTION

1. Velodyne is a pioneer and a classic American success story. Its history reads like a Hollywood script describing how one man's genius and moxie changed the world. Indeed, even typically staid financial publications and dry technology journals break form and report that Velodyne's founder, David Hall, designed an "audacious" and "revolutionary" invention that "change[d] the world" by "giving automobiles the sense of sight." The heart of this case is the story of how Mr. Hall and Velodyne made that invention, persevered through criticism and adversity, changed the course of history by making autonomous vehicles a reality, and built Velodyne into a market leader. Also at its heart is the threat posed to that success by those, including Hesai, who have taken Velodyne's revolutionary invention, incorporated it into their competing products, and are injecting those infringing products into the United States market.

2. In the early 2000s, the United States government was looking to spur the development of autonomous vehicles. So one of its core research agencies, DARPA, challenged innovators to design self-driving vehicles and enter them in a race to win $1 million. Twenty-one teams populated by leading scientists and engineers qualified for the first Grand Challenge in 2004, and the field narrowed to fifteen for the race. Not a single vehicle finished that first race in 2004. The most successful vehicle managed just 7.4 miles.

3. Enter David Hall, a designer of high-end audio speakers who founded Velodyne Acoustics in 1983. Brimming with inventive energy, Mr. Hall spent much of his free time building robots. By the early 2000s, he was growing frustrated with Silicon Valley's ever-lengthening commute. When DARPA announced its Grand Challenge, he saw an opportunity to leverage his hobby into solving that problem. Mr. Hall entered the 2004 challenge with a camera-based system, quickly realized that a better technology was needed, and in 2005 focused on laser imaging detection and ranging ("LiDAR").

4. Mr. Hall and his unique background brought new insights to LiDAR. While those entrenched in the field were designing LiDAR systems that "scanned for objects only along a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

1  single, fixed line of sight," Mr. Hall recognized that such systems could not generate the comprehensive data needed to navigate complex environments reliably. So he took a completely different approach: he conceived of a novel LiDAR system that rotates a plurality of pulsing laser emitters and avalanche photodiode detectors ("APDs") to use time of flight data to generate a dense "3-D point cloud" with a 360-degree field of view, which the vehicle could use to "see" its complex surroundings just as humans do. His competitors were skeptical. Indeed, the field's luminaries scoffed at the idea—the data would be generated too slowly, they said. But Mr. Hall trusted his instincts and stuck with his design.

5. Mr. Hall was right, and the triumph of his invention was unequivocal: six teams completed DARPA's 2007 Urban Challenge by navigating a 60-mile urban course in which they not only had to navigate the course, but also obey all traffic laws and account for the other vehicles. Five of those teams, including both the winner and the runner-up, used David Hall's "Velodyne" system.

6. The U.S. Patent Office awarded Mr. Hall United States Patent No. 7,969,558 (the "'558 patent") for his invention. This invention was honored by the Smithsonian Institute, which now houses the original prototype. Even the once-skeptical industry embraced his design. An August 2017 Forbes article recounts the industry's reaction to the "revolutionary" invention claimed in the '558 patent and embodied in Velodyne's practicing sensors. The Verge, a technology journal, described Mr. Hall's invention as "audacious," recognizing that "Velodyne has become the gold standard for automotive LIDAR, used by almost all the major players trying to produce driverless cars." Velodyne was recognized as one of the most innovative companies in the global transportation industry "for giving automobiles the sense of sight." Most recently, in 2018, the Intellectual Property Owners Education Foundation named Mr. Hall "Inventor of the Year" for "creating the groundbreaking lidar sensor technology that is the essential component for fully autonomous vehicles."

7. Velodyne launched its first commercial 3-D LiDAR product in 2007. By continuing to invest its substantial effort, intellectual firepower, and millions of dollars in the design, development, and manufacturing of 3-D LiDAR technology, Velodyne grew to the market

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

1  leader that it is today.

2  8. Now, Hesai threatens Velodyne and its business. Hesai took Velodyne's
3  revolutionary invention and incorporated it into its own competing products. As set forth below,
4  Hesai's rotating 3-D LiDAR systems infringe Velodyne's '558 patent. Even worse, Hesai knew
5  of and studied Velodyne's products and patented technology before incorporating it into Hesai's
6  infringing products. Velodyne asks this Court to protect its invention and halt Hesai's willful and
7  infringing conduct.

## NATURE OF THE ACTION

9. This is a civil action for willful patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and for such other relief as the Court deems just and proper.

## PARTIES

10. Velodyne is a corporation organized under the laws of the State of Delaware and has its principal place of business in 5521 Hellyer Avenue, San Jose, CA 95138.

11. Velodyne is an innovative developer, manufacturer, and supplier of real-time LiDAR sensor technology, which is used in a variety of applications, including autonomous vehicle navigation, vehicle safety systems, 3D mobile and aerial mapping, surveying, security, defense, and industrial automation, among others.

12. Velodyne's founder David S. Hall introduced Velodyne's first high-resolution LiDAR sensor, the HDL-64, in 2007. Thereafter, Velodyne quickly emerged as a global leader in LiDAR technology. Velodyne has invested millions of dollars in developing its technology and, as a result of its substantial investment in research and development, has invented, designed, developed, manufactured, and sold some of the most advanced 3D laser imaging technology in the world. While Velodyne's 3-D LiDAR sensors are best known as the roof-mounted rotating devices that guide autonomous vehicles along Silicon Valley streets, they are valuable for numerous other applications such as aerial mapping, mobile mapping, security, and industrial automation, to name a few.

13. Velodyne's technological achievements have earned it various industry awards, including Frost & Sullivan's 2015 American Automotive Advanced Driver Assistance System

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

1  (ADAS) Sensors Product Leadership Award for Velodyne's VLP-16 LiDAR puck sensor. *Frost & Sullivan Honors Velodyne LiDAR with 2015 North American Automotive ADAS Sensors Product Leadership Award*, PRWEB (Mar. 25, 2015) (*available at* http://www.prweb.com/releases/2015/03/prweb12602944.htm). Velodyne's "high performance LiDAR technology has [also] been recognized by global automotive OEMs and rideshare customers as a critical element to enabling the development of fully autonomous vehicles." *Velodyne LiDAR Gears Up for the Autonomous Revolution with Investments from Ford and Baidu*, BUSINESSWIRE (Aug. 16, 2016) (*available at* http://www.businesswire.com/news/home/20160816005465/en).

14. Hesai is a corporation organized in China, and has its principal place of business at Building L2, Hongqiao World Center, Shanghai, China. Defendant was originally founded in California as Hesai Instruments, Inc. in 2013 and relocated to China in 2014.

15. Hesai is involved in the design, development, manufacture, offer for sale, and sale of rotating 3-D LiDAR devices and products containing the same, including the Pandar20A/B, Pandar32, Pandar40, Pandar40P, Pandar64, and Pandora devices (collectively, the "Accused Products"), and components thereof. For example, according to Hesai's LinkedIn, "Hesai specializes in designing and manufacturing laser sensors for different industries, including LiDARs (3D scanners for self-driving cars and robots), and gas leak remote sensors for natural gas industry." *Hesai Technology: About*, LINKEDIN, https://bit.ly/2M91BnR (last accessed Aug. 9, 2019).

**JURISDICTION AND VENUE**

16. This civil action asserts claims arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.* The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has personal jurisdiction over Hesai by virtue of its transacting and doing business in the State of California and this District, committing acts of patent infringement in the State of California and this District, and/or directing its infringing products to California for use in this State. Hesai has sold its infringing products to customers in Menlo Park, Mountain

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

View, Palo Alto, and San Francisco, all of which are within the jurisdiction of the Northern District of California and the State of California, and admits on its website that it knows that these products are used by its customers in this District and State. Accordingly, this Court has specific jurisdiction over Hesai in connection with this action and its contacts with the State of California are continuous and systematic to such extent that Hesai is subject to the general jurisdiction of the State of California and this Court.

18. Venue is proper in this district under 28 U.S.C. § 1391(c)(3). Hesai is a Chinese company, so venue is proper in any judicial district in the United States.

## INTRADISTRICT ASSIGNMENT

19. This Complaint includes an intellectual property action, an excepted category under Civil Local Rule 3-2(c), and consequently should be assigned on a District-wide basis.

20. In *Quanergy Systems, Inc. v. Velodyne LiDAR, Inc.*, No. 5:16-cv-05251-EJD (Sept. 13, 2016), the Honorable Judge Edward J. Davila previously issued a Claim Construction Order construing claim terms for the patent at issue in this case. *Quanergy Sys., Inc. v. Velodyne LiDAR, Inc.*, No. 16-cv-05251-EJD, 2017 WL 4410174, at *1 (N.D. Cal. Oct. 4, 2017). This action concerns substantially the same property—Velodyne's '558 patent—as the *Quanergy* case, and it appears likely that there will be an unduly burdensome duplication of labor and expense if this case is conducted before a different judge. Under Civil Local Rule 3-12(a), the instant case is related to the *Quanergy* case.

## ASSERTED PATENT

21. On June 28, 2011, the United States Patent and Trademark Office, after full and fair examination, duly and legally issued U.S. Patent No. 7,969,558, entitled "High Definition LiDAR System," to Mr. Hall, Velodyne's Founder and Chief Executive Officer. Mr. Hall is the sole named inventor. A true and correct copy of the '558 patent is attached as Exhibit A.

22. Velodyne owns by assignment all rights, title, and interest in the '558 patent with full rights to enforce the '558 patent and sue to recover for past, present, and future infringement.

23. The '558 patent application (Application No. 11/777,802) was filed on July 13, 2007. Velodyne filed related Provisional Patent Application No. 60/807,305 on July 13, 2006.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

24. The '558 patent claims a LiDAR system that rotates a plurality of laser emitters and APDs to generate a dense 3-D point cloud. Using the rapidly rotating structure and angular orientation of the emitters claimed in the '558 patent, pulses of laser light can be transmitted in many different directions in very short periods of time. The time it takes for the light to return to the APD is measured, thus creating data (called a "pixel"), which corresponds to the distance from the LiDAR sensor to the objects surrounding it.

25. When multiple pulses are emitted from a rotating sensor in varied directions and in rapid succession, many pixels can be collected extremely quickly, creating a "point cloud." These "point clouds" can then be rendered into "3-D point clouds," which are processed into images or analyzed by a computer to map the surrounding terrain and objects. An exemplary 3-D point cloud generated by Velodyne's 3-D LiDAR sensor is shown below:



26. The '558 patent is valid and enforceable. Indeed, the United States Patent Trial and Appeal Board ("PTAB"), after instituting *inter partes* review ("IPR"), recently issued a Final Written Decision upholding all challenged claims of the '558 patent as patentable. The PTAB found that Mr. Hall's "claimed invention was revelatory and not obvious." IPR2018-00255, Final Written Decision, Paper 59 (P.T.A.B. May 23, 2019) at 28. The invention claimed in the '558 patent overcame the shortcomings of the prior art to permit safe and successful autonomous navigation. Using the particular configuration and orientation set forth in the '558 patent's claims,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

including a plurality of pulsing emitters and APDs rotated at a speed of at least 200 RPM, the claimed 3-D LiDAR system can generate highly accurate and extremely dense 3-D point clouds. The density of these point clouds can be used for high-speed autonomous navigation, to detect both positive and negative obstacles, and to provide a 360-degree field of view, all with high point cloud refresh rates—the foundation for safe and successful autonomous navigation. Put differently, as the PTAB found, Mr. Hall's "claimed invention, as embodied in Velodyne's HDL-64E sensor, resolved a long-felt need for a LiDAR sensor that could capture distance points rapidly in all directions and produce a sufficiently dense 3-D point cloud for use in autonomous navigation." *Id.* at 34.

27. As the PTAB's discussion and the patent itself illustrate, the '558 patent claims are directed to technological improvements of pulsed LiDAR technology that solve technical problems, rather than to an abstract idea or a law of nature. Likewise, as the PTAB's finding that the asserted claims are "revelatory" also shows, the specific systems and methods claimed in the '558 patent claims were not well-understood, routine, or conventional. In fact, those claims incorporate unconventional limitations and are unconventional as a whole, as demonstrated by the skepticism shown by persons of skill in the field at the time of the invention. *See supra*, ¶ 4.

**COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. 7,969,558**

28. Velodyne repeats and realleges paragraphs 1 through 27 above as if fully set forth herein.

29. Hesai directly infringes at least claim 1 of the '558 patent, literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the Accused Products in the United States in violation of 35 U.S.C. § 271(a).

30. Claim 1 reads as follows.

    1. A lidar-based 3-D point cloud system comprising:

    a support structure;

    a plurality of laser emitters supported by the support structure;

    a plurality of avalanche photodiode detectors supported by the support structure; and

    a rotary component configured to rotate the plurality of laser

emitters and the plurality of avalanche photodiode detectors at a speed of at least 200 RPM.

31. The Accused Products are LiDAR based 3-D point cloud systems and this claim requirement is satisfied literally or under the doctrine of equivalents. For example, Hesai characterizes its Pandar40 device as "the latest generation of mechanical LiDARs." The Pandar40 device uses time of flight data. As shown in the image below, the Pandar40 device captures data used to create 3-D point clouds.



32. The Hesai Accused Products include, literally or under the doctrine of equivalents, a support structure. For example, Hesai admits that its Pandar40 device has "40 pairs of laser emitters and receivers [that] are attached to a rotating motor inside the LiDAR housing."

33. The Hesai Accused Products further include, literally or under the doctrine of equivalents, a plurality of laser emitters supported by the support structure. For example, Hesai admits that its Pandar40 device has "40 pairs of laser emitters and receivers [that] are attached to a rotating motor inside the LiDAR housing."

34. The Hesai Accused Products also include, literally or under the doctrine of equivalents, a plurality of avalanche photodiode detectors supported by the support structure. As

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

noted above, the Pandar40 device has "40 pairs of laser emitters and receivers [that] are attached to a rotating motor inside the LiDAR housing." The Pandar40 device detects "reflected beams" by the "optical sensor."

35. The Hesai Accused Products include, literally or under the doctrine of equivalents, a rotary component configured to rotate the plurality of laser emitters and the plurality of avalanche photodiode detectors at a speed of at least 200 RPM. For example, the Pandar40 device rotates at a rate of 10 to 20 Hz, which translates to 600 to 1200 RPM. Indeed, "[u]sers can choose the spinning rate from 600 rpm and 1200 rpm." And, as set forth above, the "laser emitters and receivers are attached to a rotating motor inside the LiDAR housing."

36. Hesai actively, knowingly, and intentionally induces infringement of one or more claims of the '558 patent, including at least claim 1, under 35 U.S.C. § 271(b) by actively encouraging others, including its customers, to make, use, offer to sell, sell, and/or import the Accused Products in this judicial district and elsewhere in the United States. Hesai knew of and studied Velodyne's products and patented technology before it incorporated that technology into its products, as its personnel admitted in public interviews. Hesai also had actual knowledge of the '558 patent at least as of November 8, 2016, when Hesai filed a patent application (CN206223978) that cited the '558 patent in its specification. Velodyne publicly identifies its products as incorporating the inventions claimed in the '558 patent and marked its products accordingly. And Hesai actively promotes the sale, use, and importation of its infringing rotating 3-D LiDAR devices in marketing materials, technical specifications, data sheets, web pages on its website, press releases, and user manuals, as well as at trade shows and through its sales and distribution channels that encourage infringing offers to sell, sales, and/or importation of the Accused Products. These actions collectively demonstrate that Hesai has had the specific intent to induce, or was willfully blind to inducing, infringement of the '558 patent.

37. Hesai contributes to infringement of one or more claims of the '558 patent, including at least claim 1, by others, including its customers. Hesai provides these customers with the Accused Products, which are specially made or adapted to infringe these claims and are not staple articles of commerce suitable for substantial noninfringing use. As discussed above, Hesai

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

has had actual knowledge of the '558 patent at least as of November 8, 2016, when Hesai filed a patent application that cited the '558 patent in its specification.

38. Hesai's infringement of the '558 patent as alleged above has been and continues to be egregious. Hesai had prior knowledge of the '558 patent and Hesai extensively studied Velodyne's technology and crafted its products to target Velodyne and its customers. As such, Hesai's infringement has been and continues to be willful, entitling Velodyne to enhanced damages under 35 U.S.C. § 284, and a finding that this case is exceptional under 35 U.S.C. § 285.

39. On information and belief, Hesai has profited from and will continue to profit from its infringing activities. Velodyne has been and will continue to be damaged by Hesai's infringing activities. As a result, Velodyne is entitled to injunctive relief and damages adequate to compensate it for such infringement, in no event less than a reasonable royalty, in accordance with 35 U.S.C. §§ 271, 281, 283, and 284. The amount of monetary damages Hesai's acts of infringement have caused to Velodyne cannot be determined without an accounting.

40. The harm to Velodyne from Hesai's ongoing infringing activity is irreparable, continuing, and not fully compensable by money damages, and will continue unless Hesai's infringing activities are enjoined.

**PRAYER FOR RELIEF**

**WHEREFORE**, Velodyne respectfully requests that the Court enter judgment in its favor and against Hesai on this Complaint as follows:

A. A judgment that Hesai has infringed and continues to infringe, induce the infringement of, and contribute to the infringement of the '558 patent under at least 35 U.S.C. §§ 271(a) and (b), and that Hesai's infringement was willful;

B. A permanent injunction prohibiting Hesai and its officers, agents, representatives, assigns, licensees, distributors, employees, related entities, and all those acting in privity or acting in concert with them from:

    a. infringing, inducing, or contributing to the infringement of the '558 patent; and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

b. soliciting any new business or new customers using any information or materials derived from infringing the '558 patent;

C. An award of monetary damages, to be obtained from any and all of Hesai's assets, sufficient to compensate Velodyne for Hesai's patent infringement, with interest, pursuant to at least 35 U.S.C. § 284;

D. An award of enhanced damages, to be obtained from any and all of Hesai's assets, or three times the amount found or assessed for Hesai's willful patent infringement, pursuant to 35 U.S.C. § 284, including prejudgment interest on such damages;

E. An order finding this case exceptional and awarding Velodyne its attorneys' fees, to be obtained from any and all of Hesai's assets, pursuant to 35 U.S.C. § 285, including prejudgment interest on such fees;

F. An accounting and supplemental damages for all damages occurring after the period for which discovery is taken, and after discovery closes, through the Court's decision regarding the imposition of a permanent injunction;

G. An award of Velodyne's costs and expenses of this suit as a prevailing party, to be obtained from any and all of Hesai's assets; and

H. Any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Velodyne hereby demands a trial by jury on all issues so triable.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]

Dated:  August 13, 2019                              LATHAM & WATKINS LLP

By */s/ Douglas E. Lumish*
   Douglas E. Lumish
   of Latham & Watkins LLP

Attorneys for Plaintiff
Velodyne Lidar, Inc.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. [CASE NUMBER]